236 P.2d 38

**DE SANTIS v. DIXON.**
No. 4973.

Supreme Court of Arizona.
Oct. 1, 1951.

W. H. Quesnel (now deceased), and Laurence Davis of Tucson, for appellant.

Darnell, Robertson & Holesapple and Clarence V. Perrin, all of Tucson, for appellee.

MURRY, Superior Court Judge.

This is an action by one partner, Joe DeSantis, plaintiff below and appellant herein, against the other partner, Bruce B. Dixon, defendant and appellee, for an accounting and dissolution of partnership, for temporary injunction, for appointment of receiver and for damages, to which the defendant answered and counterclaimed. For convenience we will refer to the parties as they were designated in the trial court.

The case was tried to the court without a jury. During the trial all factual questions were settled by stipulation of the parties (which stipulation was approved by the court), except the question of title to cer-

tain real property and whether any rental liability was owed by the partnership to the defendant for the use of the said property. Plaintiff claimed the real estate was partnership property, while the defendant asserted that it was his separate property.

Judgement was rendered against the plaintiff on the complaint and for the defendant on the counterclaim, quieting title in the defendant to the following described property: Lots Nine (9) and Twelve (12) in Block 256 of the City of Tucson, Pima County, Arizona. Also known as 137 S. 6th Avenue, Tucson, Arizona. Defendant was also awarded rent on said premises in the sum of eleven hundred dollars and costs. This appeal followed.

The material facts briefly summarized are as follows: In 1942 an indefinite oral agreement of partnership was entered into between the plaintiff and defendant for the buying and selling of used cars, under the firm name of Dixon-DeSantis Motor Co.

In the early summer of 1943 the location where the partners were doing business was sold and they were informed that they would not be able to renew their lease in the fall. The necessity of moving was the prime factor leading to the acquisition of the property in dispute. There is a sharp conflict in the testimony concerning the negotiations for the purchase of the property in question, which will be discussed in detail later. The evidence as to the conduct of the parties and their method of bookkeeping as to the property after it

was conveyed to the defendant is also conflicting. But the undisputed facts are that the two lots were purchased with the defendant's funds for $24,500, $12,500 being paid in cash and a mortgage executed by the defendant for the balance. Title was taken in the name of the defendant only. In due course the business was moved to these lots and an option was granted by the defendant to the plaintiff, giving plaintiff the right to buy the entire property upon the death of the defendant, on the condition the defendant had not already sold it.

Plaintiff makes the following four assignments of error:

1. The trial court erred in holding that the purchase by one partner, with his own funds, of a vacant piece of real estate for the use of the partnership did not bear such relation to the firm business to hold the purchasing partner a constructive trustee for the firm.

2. The trial court erred in finding the option agreement was almost conclusive evidence that on that date both parties conceded the defendant owned the lots in question.

3. The trial court erred in finding there was rent due the defendant from the firm.

4. The trial court erred in finding there was no evidence that the defendant's capital account was credited with the cash payment made on the lots or that there was no evidence the down payment was entered

as having been paid by the partnership.

We shall dispose of the last three assignments of error first, as they are concerned with the evidence in the case. The learned trial court, in referring to the option agreement stated: " * * * it appears to us to be almost conclusive evidence that on that date (date the option was signed by both parties) both parties conceded that the defendant owned the lots." It is this statement the plaintiff has taken exception to in his second assignment of error.

■ Plaintiff concedes that findings of fact by the lower court are most generally without the province of an appellate tribunal, but relies upon this exception to the rule. If the evidence on which the findings of the trial court are based is entirely documentary, the appellate court is not bound by the trial court's findings but may make an independent decision on the factual questions. Daily Mines Co. v. Control Mines, Inc., 59 Ariz. 138, 124 P.2d 324. No quarrel is taken with the above principle of law, but does it apply in the instant case? *We think not.*

The option agreement was considered by the court not as an instrument for the conveyance of real property nor as a waiver of an interest in real property, as it lacked the formal requirements of such an instrument, but only as another link in the chain of evidence in determining the status of the parties in relation to the title of the property. The trial court held not that the option was conclusive evidence as to the rights of the parties, but that it was *almost* conclusive between the partners that the defendant was then the owner.

■ The trial court could well have reached this conclusion. We believe the trail court's inference drawn from examining the document was reasonable and we must accept that inference. First Nat. Bank v. Osborne, 39 Ariz. 107, 4 P.2d 384; Kenton v. Wood, 56 Ariz. 325, 107 P.2d 380.

■ The third assignment of error is concerned with whether the trial court erred in finding that rent was due the defendant from the firm. There is no conflict as to legal title being in the defendant, or that the land was used by the partnership for partnership purposes. There was evidence, upon which the trial court could reasonably base its judgment, that the partnership had agreed the firm would pay rent to the appellee for the use of the property. And where no findings of fact were requested of or made by the trial court, the supreme court must assume on appeal that every fact necessary to support its judgment was found. Estate of Brashear, 54 Ariz. 430, 96 P.2d 747; Grimm v. Beard, 63 Ariz. 281, 161 P.2d 924; Town of Wickenburg v. Sabin, 68 Ariz. 75, 200 P.2d 342. Therefore the decision on this point was legally correct.

Considering plaintiff's fourth assignment of error, let us ask another question. Does.

the evidence show there was an oral agreement between the partners that the defendant should purchase the lots for and in the name of the partnership with partnership funds, and if so, does such an agreement come within the statute of frauds, or does it give rise to a constructive trust?

To answer this question it is not necessary for us to discuss and set forth in detail in this opinion the voluminous evidentiary facts upon which the trial court based its decision that there was no such agreement. In Glaspie v. Williams, 46 Ariz. 381, 51 P.2d 254, the court held: If there is reasonable and competent evidence to support the findings of fact of the trial court they will be sustained by this court. In First Nat. Bank v. Osborne, supra, the court held: If different inferences as to the ultimate facts may be drawn from evidentiary facts, we must accept the inference drawn by the trial court. It is sufficient to say that under the above cases there is, in our opinion, enough competent evidence to sustain the finding of the trial court, that there was not an oral agreement between the partners, that the defendant should purchase the lots in the name of the partnership with partnership funds. It is therefore unnecessary for us to consider the matter of the statute of frauds.

Plaintiff's first assignment of error poses a more difficult question. Does the purchase of a vacant lot by one member of a partnership, doing business as used car dealers, with his own funds, with full knowledge that the property on which the firm was doing business was no longer available for such purpose, make the purchasing partner a constructive trustee for the partnership? In other words does a constructive trust arise inherently out of the partnership relation?

In answer to the above questions, among other cases, the plaintiff has cited us: Caveney v. Caveney, 234 Wis. 637, 291 N.W. 818; Dikis v. Likis, 187 Ala. 218, 65 So. 398. In the latter case, one of the partners leased a storehouse *necessary* for the firm business in his own name, there being no assent by his copartner to its being treated as an individual transaction. The court held that the storehouse was necessary for the partnership business, and that the one who purchased it held it in trust for the partnership. In the case of Caveney v. Caveney, supra, the court held that where a member of a partnership dealing in fuel, building material and agricultural machinery purchased gravel pits in his own name at a time when the partnership had ample funds with which to make such a purchase for itself, and sand and gravel from the pits were used and sold in the partnership business, the partner being paid the wholesale market price therefor, *the purchases were in violation of the partnership obligations,* and the partner held the property in trust for the partnership.

It will be noted that the crucial tests applied in the above cases were: Is the prop-

erty necessary to the firm business? Has the partnership obligation been violated?

■ We agree with the trial court's expressed view that the evidence in the instant case does not show any necessary relationship between the property and the business. The property was an unimproved lot in the city of Tucson. There is no evidence that there were not other lots equally adaptable to the business of buying and selling used cars, nor is there any showing there were not other more desirable locations. We think the trial court was correct in ruling that a vacant building lot which is adaptable to many uses does not bear a peculiar and immediate relationship to the firm business of buying and selling used cars. ·

■ Nor was any violation of the partnership obligation shown in the instant case. The duty of one partner to another is well stated in 47 C.J. 771–772, 68 C.J.S., Partnership, § 76: "The relation of partnership is fiduciary in character, and imposes upon the members of the firm the obligation of the utmost good faith in their dealings with one another with respect to partnership affairs, of acting for the common benefit of all the partners in all transactions relating to the firm business, and of refraining from taking any advantage of one another by the slightest misrepresentation, concealment, threat or adverse pressure of any kind." The lower court failed to find facts substantiating any breach of this duty and since it is the sole judge not only of the evidence but also of reasonable inferences to be drawn therefrom, we are bound thereby. First Nat. Bank v. Osborne, supra; Jackson v. Griffin, 39 Ariz. 183, 4 P.2d 900. Under the circumstances shown here a partner who buys a vacant lot is not a constructive trustee for the partnership merely by virtue of the partnership relation.

Judgment affirmed.

UDALL, C. J., and STANFORD, PHELPS and LA PRADE, JJ., concur.

Note: Justice EVO DE CONCINI, being disqualified, the Honorable PORTER MURRY, Judge of the Superior Court of Greenlee County, was called to sit in his stead.